UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

===================================

EL-ANARA ROMANAC,

                Plaintiff,

    v.                                                    **DECISION AND ORDER**

                                   17-CV-334S

TOWN OF CHEEKTOWAGA, NEW YORK,
MICHAEL CURTIS, and B. BZIBZIAK,

                Defendants.

===================================

## I.     Introduction

This is a civil rights action from an April 2014 early morning traffic stop.   As characterized by Plaintiff during the incident, this case occurred "all for chicken wings" (Docket No. 21, Defs. Ex. K, video of the traffic stop, at time stamp mark 00:26:23). Plaintiff claims that Defendants, Cheektowaga Police Officers Michael Curtis and Brian Bzibziak and the Town of Cheektowaga (hereinafter "Town"), made "an unreasonable, unwarranted and illegal arrest and seizure of his person, assaulted, battered and falsely imprisoned him" (Docket No. 1, Compl. ¶ 2) for this traffic stop after he ate wings at a green traffic light.  Plaintiff alleges that these constitutional violations were committed as a result of the policy of the Defendant Town.

Before this Court is Defendants' Motion for Summary Judgment (Docket No. 20[1]). For the reasons stated herein, this Motion is granted in part (dismissing the false arrest,

---

[1]Defendants submitted their attorney's Affidavit with exhibits, their Statement of Material Facts, and their Memorandum of Law, Docket No. 20; the recording of the dashboard camera video from April 19, 2014, Docket No. 21, Ex. K.

        In opposition, Plaintiff submitted his Responding Statement, his Affidavit, his attorney's Affidavit, with exhibits, Docket No. 24; Plaintiff's copy of the dashboard camera recording, Docket No. 28, Ex. B;

false imprisonment, and municipal liability claims against Defendant Town), denied in part (finding issues of material fact precluding judgment dismissing Plaintiff's excessive force claims).

## II.    Background

### A.  Complaint

Plaintiff alleges here nine counts.  In Count I of the Complaint, Plaintiff asserts that Curtis and Bzibziak violated Plaintiff's constitutional rights and Plaintiff alleges damages under 42 U.S.C. § 1983 (Docket No. 1, Compl. ¶ 25).  Count II alleges assault by Curtis when he knocked Plaintiff to the ground and breaking his glasses and striking his forehead on the ground (id. ¶ 27) while Count III alleges assault by Bzibziak by placing his hands and feet on Plaintiff's prone body, with Bzibziak's knee on Plaintiff's back (id. 29).  Counts IV and V allege that Curtis and Bzibziak committed battery (id. ¶¶ 31, 33), while Count VI allege battery by both individual Defendants for their pinning Plaintiff's body down (id. ¶ 35).

Note, there is an issue whether Counts II through VI are distinct state tort claims or are mere amplifications of Plaintiff's federal civil rights claims (see Docket No. 26, Pl. Memo. at 13-14).

Count VII alleges false imprisonment against Curtis and Bzibziak for detaining Plaintiff against his will and without a lawful basis (Docket No. 1, Compl. ¶ 37).

Counts VIII and IX are alleged against the Defendant Town.  Count VIII alleges a § 1983 violation from the Town's policy of inadequately supervising its police officers

---

additional exhibits, Docket No. 25; redacted exhibits, Docket No. 29; and his Memorandum of Law, Docket No. 26.
    In reply, Defendants submitted their Reply Memorandum of Law, Docket No. 30.

leading to the officers' misconduct.  (Id. ¶¶ 39-42.)  Count IX alleges respondeat superior liability against the Town for the assault, battery, false arrest, and false imprisonment committed against Plaintiff by the individual officers (id. ¶ 44).

Plaintiff seeks declaratory judgment declaring Curtis and Bzibziak's conduct was unconstitutional, compensatory and punitive damages, and a permanent injunction against Town to require it to adopt policies relating to the hiring and supervision of its police officers (id., at page 10).

      B.  Proceedings

Defendants answered (Docket No. 4), asserting (among other defenses) that some claims are barred because Plaintiff failed to serve a Notice of Claim as required by New York General Municipal Law § 50-e (id. ¶ 14); that Defendants acted under privilege and thus are immune from liability (id. ¶ 15); that the individual Defendants acted in good faith in the performance of their respective duties (id. ¶ 16); that Plaintiff's state law causes of action are time barred by the statute of limitations (id. ¶ 17); and that the Complaint fails to state viable claims (id. ¶ 13).

After entry of the Scheduling Order (Docket No. 10) and its extension (Docket Nos. 17, 18-19), Defendants filed the present Motion for Summary Judgment (Docket No. 20).

      C.  Defendants' Motion for Summary Judgment (Docket No. 20).

In granting the parties' consent motion for extension of time for briefing on the Motion for Summary Judgment (Docket No. 22), responses to the motion were due on August 23, 2019, and replies by September 13, 2019 (Docket No. 23).  The motion then was deemed submitted without oral argument.

1.   April 19, 2014, Traffic Stop

The parties dispute whether Officers Curtis and Bzibziak had probable cause to stop Plaintiff on April 19, 2014, and other events during the stop.  This Court first will cite to Defendants' Statement of Facts (Docket No. 20) and note where Plaintiff disputes the facts alleged therein (see Docket No. 24, Pl. Response).

According to Defendants' Statement (Docket No. 20), at approximately 2:24 am on April 19, 2014, Curtis and Bzibziak stopped Plaintiff.  Defendants allege that Curtis and Bzibziak, driving west on Walden Avenue, saw Plaintiff stopped in the middle of Walden Avenue near Reo Avenue, Cheektowaga, New York.  (Id. ¶ 1.)  Plaintiff disputes this, stating that he saw Curtis and Bzibziak's patrol car in the parking lot of a car wash as Plaintiff drove past them; Plaintiff stopped at the intersection of Walden and Reo Avenue waiting for the light to change (Docket No. 24, Pl. Response ¶ 1).  Curtis drove the patrol car and turned it around to follow Plaintiff (Docket No. 20, Defs. Statement ¶¶ 2, 3); Plaintiff disputes whether the patrol car had passed him and turned around (Docket No. 24, Pl. Response ¶ 3).  The officers attempted to initiate a traffic stop but Plaintiff turned onto Reo Avenue and drove up that street before stopping in front of 53 Reo Avenue (Docket No. 20, Defs. Statement ¶¶ 4, 5).

Leading to the traffic stop, Plaintiff alleges that he was picking up an order of chicken wings and just was driving home (at 130 Reo Avenue) when he was stopped by the police (Docket No. 24, Pl. Atty. Affirm., Ex. A, Pl. Aff. ¶¶ 3, 2, 5, hereinafter "Pl. Aff.").  He denies consuming any alcohol (id. ¶ 4; see Docket No. 20, Defs. Statement ¶ 11).  Plaintiff claims some ailments relative to sobriety testing; Plaintiff had a hip replacement

in 2013 requiring the use of a cane (not with him on April 19, 2014) and could not stand on one foot (Docket No. 24, Pl. Aff. ¶¶ 26-28).  He also had glaucoma (id. ¶ 29).

The registration for the vehicle Plaintiff was driving had expired (Docket No. 20, Defs. Statement ¶ 6).  Plaintiff explains that the vehicle was his girlfriend's and that he was unaware of the status of the registration (Docket No. 24, Pl. Response ¶ 6; Docket No. 24, Pl. Aff. ¶ 21).  Plaintiff later explained that this vehicle was a replacement vehicle for one that was totaled, but the dealer failed to renew the registration on the new vehicle (Docket No. 24, Pl. Aff. ¶ 22).

Curtis claims that he also noted signs of Plaintiff's intoxication including the odor of alcohol and slurred speech (Docket No. 20, Defs. Statement ¶ 6).  According to the arrest report (e.g., Docket No. 20, Defs. Atty. Aff. ¶ 3, Ex. H), these signs of Plaintiff's intoxication also included Plaintiff failing the horizontal gaze nystagmus test, Plaintiff refusing other physical tests, and having slurred, slow speech (Docket No. 20, Defs. Atty. Aff. Ex. H, at 2).  Bzibziak also believed Plaintiff was intoxicated (Docket No. 20, Defs. Statement ¶ 7). Plaintiff denies any intoxication (Docket No. 24, Pl. Response ¶¶ 6, 7; Docket No. 20, Defs. Statement ¶ 11).

After stopping the vehicle, Curtis asked Plaintiff to exit it (Docket No. 20, Defs. Statement ¶ 8).  Plaintiff notes that he was asked to leave more than six minutes after the stop began (Docket No. 24, Pl. Response ¶ 8; Docket No. 28, Pl. Ex. B, video).  Curtis then initiated standard field sobriety tests (moving a finger or flashlight beam before Plaintiff's eyes, requiring Plaintiff to balance on one leg) (Docket No. 20, Defs. Statement ¶ 9).  Curtis reported that Plaintiff failed the horizontal gaze nystagmus test (id. ¶ 10; see also Docket No. 24, Pl. Response ¶ 10).  Plaintiff then refused to participate in other field

5

sobriety tests (Docket No. 20, Defs. Statement ¶ 10).  Curtis told Plaintiff to place his hands behind his back as he was under arrest (id. ¶ 12).

Plaintiff disputes the defense version of events, stating that Curtis insisted upon further sobriety testing, but Plaintiff "politely, but firmly" declined (Docket No. 24, Pl. Response ¶ 12).  Plaintiff contends that Curtis had directed Plaintiff to turn around and Plaintiff said "quietly but firmly" "no" repeatedly (id.).  Plaintiff amplifies his version of the event in his Affidavit, claiming that he had asked repeatedly why he was stopped, but Curtis did not answer (Docket No. 24, Pl. Aff. ¶¶ 17-18, 31-32, 34, 37-38, 40).  Curtis told Plaintiff to stand on one foot, but Plaintiff was unable to do so (id. ¶¶ 36-37).  Plaintiff then turned to Bzibziak to ask him why he was stopped but Curtis told Plaintiff to shut up (id. ¶¶ 41-42).  Plaintiff then turned his back on Curtis and attempted to flee (Docket No. 24, Defs. Statement ¶ 13; see Docket No. 24, Pl. Aff. ¶ 43).  Plaintiff disputes this; after he asked Curtis why he was stopped and Curtis did not answer, Plaintiff claims that Curtis punched Plaintiff in the jaw, knocking Plaintiff to the ground (Docket No. 24, Pl. Response ¶ 13; see Docket No. 24, Pl. Aff. ¶ 43 (Curtis "sucker-punched" Plaintiff)).

Defendants contend that Plaintiff was tackled to the ground (Docket No. 20, Defs. Response ¶ 14); Plaintiff denies the characterization of how he got to the ground, but he admits that Curtis' blow forced Plaintiff to the ground (Docket No. 24, Pl. Response ¶ 14). Plaintiff claims that Curtis pressed his arm against the back of Plaintiff's neck and Plaintiff briefly lost consciousness (id.).  Bzibziak assisted in handcuffing Plaintiff (Docket No. 20, Defs. Response ¶ 15).  Plaintiff was placed in the patrol car (id. ¶ 16).  Plaintiff claims that he was dragged by four officers to the patrol car (Docket No. 24, Pl. Response ¶ 16), he was shoved into the vehicle, and he requested to speak to a sergeant or lieutenant (id.).

Plaintiff argues that there are material issues of fact, such as how Plaintiff sustained injuries to his ribs (Docket No. 26, Pl. Memo. at 10-11), whether Curtis violated Plaintiff's Sixth Amendment rights in depriving him counsel after he requested it (id. at 11). During Curtis reading Plaintiff his Miranda rights, Plaintiff repeatedly asked for a lawyer (Docket No. 24, Pl. Aff. ¶¶ 59-61, 65). Plaintiff also claims that more than seven minutes elapsed between being in the patrol car and being advised of his DWI warnings (Docket No. 24, Pl. Response ¶ 16). Plaintiff, however, has not alleged a deprivation of his right to the assistance of counsel during his arrest and detention or alleged further questioning by Curtis or Bzibziak after he invoked his right to counsel, invoking his rights under the Fourth and Fourteenth Amendments and not the Sixth Amendment (cf. Docket No. 1, Compl, ¶ 1).

Plaintiff then was taken into custody charged with driving while intoxicated, as well as unlawful possession of marijuana, resisting arrest, operation of unregistered motor vehicle on a highway, refusal to take a breath test, and failure to yield the right of way to an emergency vehicle (Docket No. 20, Defs. Statement ¶¶ 17-18).

Town Justice Paul Piotrowski heard the testimony of the arresting officer Curtis (Docket No. 25, Pl. Atty. Affirm. Ex. O, Tr. June 12, 2015, hearing) and viewed the video of the stop and "did not find credible evidence to support the charge of failure to yield the right of way, and the Court further held that there was contradictory testimony regarding the vehicle being unregistered," granting suppression of evidence and dismissing charges (Docket No. 24, Pl. Atty. Affirm. Ex. I, at 1-2). Plaintiff later reports that the criminal charges were dismissed on October 8, 2015 (Docket No. 24, Pl. Aff. Affirm. ¶ 105, Ex. I).

2.   Dashboard Camera Video

The parties submitted dashboard camera video recordings from the stop (Docket No. 21, Defs. Ex. K; Docket No. 28, Pl. Ex. B) and rely upon it to depict their respective versions of events (compare Docket No. 26, Pl. Memo. at 5-8 with Docket No. 30, Defs. Reply Memo. at 5-7).   Defendants argue that the video contradicts Plaintiff's version of the facts (Docket No. 30, Defs. Reply Memo. at 7).   Plaintiff's exhibit shows thirty-two minutes from the patrol car leaving the car wash lot and approaching Plaintiff's vehicle at the intersection of Walden and Reo until the patrol car returned to Cheektowaga Police Headquarters (Docket No. 28, Pl. Ex. B).   The defense's video shows the same events plus three minutes at the Police Headquarters' garage as Plaintiff exited the patrol car (Docket No. 21, Defs. Ex. K).

The video has Curtis' voice primarily audible on it; one can hear Curtis question Plaintiff at the beginning, but one cannot hear Plaintiff's answers when he was in the car. Plaintiff and others present later are audible once Plaintiff left his vehicle.

The perspective of the dashboard camera is fixed and straight ahead from the patrol car's windshield without any adjustment.   All that is seen is what was ahead of the patrol car, starting with the rear of Plaintiff's vehicle.   Once Plaintiff leaves the vehicle and goes eventually to the sidewalk in front of his car, for example, the subsequent events cannot be seen because his vehicle blocks the dashboard camera's view of the scene. Later, as Plaintiff entered the patrol car, he audibly cries out, but he is not visible on the recording.   Many of the events described herein is from hearing the audio recorded during the stop.

The parties track key events on the recording from the internal time stamp on that recording (Docket No. 21, Defs. Ex. K; Docket No. 28, Pl. Ex. B). Defendants' patrol car at first turned in the car wash parking lot and onto Walden Avenue. The traffic light on Walden at Reo was green, at 0:00:10-18. (Docket No. 30, Defs. Reply Memo. at 5.) The patrol car came behind Plaintiff's car at 00:00:06 (e.g., Docket No. 21, Defs. Ex. K; Docket No. 26, Pl. Memo. at 5) and Plaintiff turned up Reo Avenue, at 00:00:20 (Docket No. 26, Pl. Memo. at 5). There was no other traffic or obstructions at this intersection. Defendants contend that Plaintiff acted suspiciously by not moving at the green light and this was probable cause for the traffic stop (Docket No. 30, Defs. Reply Memo. at 5), when Plaintiff claimed that he was waiting for that traffic light to turn green (Docket No. 24, Pl. Response ¶ 1). Curtis asked Plaintiff whether he was eating chicken wings in traffic, at 00:01:46.

After Plaintiff slowly turned on Reo Avenue (see Docket No. 21, Defs. Ex. K, at 00:00:17-:27), Defendants followed and turned on the overhead emergency lights, but Plaintiff failed to pull over and stop, at 00:00:02-45. Defendants contend that Plaintiff sped up two times before ultimately stopping before 53 Reo, at 00:00:26, 00:00:55, 00:00:58. (Docket No. 30, Defs. Reply Memo. at 5.)

Once Plaintiff stopped, Curtis questioned Plaintiff, at 00:01:13, 00:01:40, and eventually asked him to exit his vehicle, at 00:06:59 (Docket No. 30, Defs. Reply Memo. at 5-6). Curtis claims that Plaintiff's eyes were glassy, bloodshot, and watery, and he has slurred and slow speech (Docket No. 20, Defs. Atty. Aff. Ex. H). The video, however, does not show Plaintiff's face and his voice was not audible during the first minutes of the stop. At two points in the recording, Plaintiff's face was visible. When he exited the vehicle, Plaintiff's face is briefly visible but from a distance, at 00:07:07. When Plaintiff

9

was brought to the patrol car, Plaintiff's face is closer to the dashboard camera but blurred, at 00:12:37-38.  These images do not assist in determining whether Plaintiff appeared intoxicated.  Defendants also claim that Plaintiff "appears to be staggering," at 00:07:15-:23 (Docket No. 30, Defs. Reply Memo. at 6).  From this Court's observation, Plaintiff appeared to have a brief weave as he walked to the front of his vehicle, at 00:07:07.

Defendants contend that Curtis attempted to administer another sobriety test, but Plaintiff refused, at 00:08:18-00:10:18 (Docket No. 30, Defs. Reply Memo. at 6).  Plaintiff asked why he was stopped, at 00:09:00 (Docket No. 26, Pl. Memo. at 5).  Defendants argue that refusal to conduct a sobriety test is grounds for arrest (Docket No. 30, Defs. Reply Memo. at 6), People v. Berg, 92 N.Y.2d 701, 685 N.Y.S.2d 906 (1999). (Defendants point to Plaintiff's admission declining sobriety testing about fourteen minutes later (id.), at 00:21:26.)

Defendants then arrested Plaintiff, claiming that Plaintiff then resisted and attempted to flee, at 00:10:38-39 (id.).  The recording, however, fails to show Plaintiff or Defendants during the arrest or purported flight or resistance.  One can hear scuffling, the officers ordering Plaintiff to cease resistance, and Plaintiff moaning, at 00:11:49-00:11:51 (id.).

Plaintiff contends that he lost consciousness and regained it with Curtis' knee on Plaintiff's spine, at 00:10:36-40 (Docket No. 26, Pl. Memo. at 7), with Plaintiff claiming that the pain revived him (id.).  Again, this is not depicted in the recording.  Plaintiff then stated that he could not breathe, at 00:11:37-44.

Two other officers arrived, and the four officers were required to move Plaintiff into Defendants' patrol car (Docket No. 26, Pl. Memo. at 7-8; Docket No. 32, Defs. Reply Memo. at 6; Docket No. 21, Defs. Ex. K, video at 00:12:36).   Plaintiff claims that they dragged him to the patrol car and shoved him into the back, at 00:12:36-00:13:30 (Docket No. 26, Pl. Memo. at 7-8; Docket No. 30, Defs. Reply Memo. at 6).   Once at the patrol car, Plaintiff refused to sit down and the officers repeatedly directed him to do so, at 00:12:43-00:13:34 (Docket No. 30, Defs. Reply Memo. at 6).   Plaintiff did ask the police supervisor to intervene, at 00:16:26-17:04 (Docket No. 26, Pl. Memo. at 8).   The two other officers and the supervisor were not named as Defendants in this case.

When an officer entered Plaintiff's vehicle to conduct a search, Plaintiff stated "you ain't gonna find nothing in there," at 00:15:27, and then called to the sergeant repeating that they would not find anything in the car, at 00:16:36-45 (id.).   Defendants contend that Plaintiff moaned, and an officer asked if he was all right, but Plaintiff did not respond, at 00:16:59-00:17:00, 00:17:04-06 (Docket No. 30, Defs. Reply Memo. at 6).

The officers then told Plaintiff why he was arrested (for driving while intoxicated) and he denied being intoxicated, at 00:18:36-50, 00:19:40, 00:22:10 (Docket No. 26, Pl. Memo. at 8; Docket No. 30, Defs. Reply Memo. at 6).   Curtis advised Plaintiff of his Miranda rights and Plaintiff requested a lawyer during that reading, at 00:19:12-35, 00:19:24 (Docket No. 26, Pl. Memo. at 8; Docket No. 30, Defs. Reply Memo. at 7), arguing that this request was disregarded (Docket No. 26, Pl. Memo. at 8), although the officers did not question Plaintiff.

Curtis then advised Plaintiff of his rights regarding a driving while intoxicated charge and chemical sobriety testing, but Plaintiff (after asking why he was stopped and

11

complaining that he never been accosted by the police before) refused that test, at 00:19:43-00:21:33.  Plaintiff stated that he was eating chicken wings at the stop light, at 00:19:43-44.

Plaintiff asked to speak with the supervising sergeant but was told that he had no right to do so, at 00:19:35 (Docket No. 26, Pl. Memo. at 8).  Plaintiff then said "I ain't takin' nothin'," at 00:20:03-00:21:36 (id. at 7); see also at 00:22:36-37 (id.) and he again asked why he was being arrested.  Following completion of the search of his vehicle, Defendants responded that he was also being arrested for possession of marijuana, at 00:22:07-00:22:09 (Docket No. 30, Defs. Reply Memo. at 6).  Plaintiff replied "what marijuana? Show it to me," at 00:22:36 (id.).  Curtis showed Plaintiff and Defendants contend that Plaintiff did not deny possession, stating that the marijuana was for personal use, at 00:22:43-47 (id. at 6-7).

Not addressed in the parties' Statements of Fact is Plaintiff's and Defendants' departure from the traffic stop to the Cheektowaga Police Department, in which Plaintiff made various statements until arrival, at 00:25:31-00:32:00.  At one point, he said that this was "all for chicken wings," at 00:26:23.

### III.   Discussion

#### A.  Applicable Standards

##### 1.  Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A fact is "material" only if it "might affect the outcome of the suit under governing law,"

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" dispute, in turn, exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party," id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion," Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (internal quotations and citations omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.32d 979, 982 (2d Cir. 1991) (citation omitted). Indeed "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper," Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82, 83 (2d Cir. 2004) (citation omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," Anderson, supra, 477 U.S. at 249.

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact,"

13

Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting Celotex, supra, 477 U.S. at 323).  The party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original removed).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the nonmovant.  Ford, supra, 316 F.3d at 354.

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2).  The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's

statement, id.  Absent such an opposing statement, the facts alleged by the movant are deemed admitted.  Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

2.  Section 1983 and Constitutional Rights

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred,' Baker v. McCallan, 443 U.S. 137, 144, n.3, 99 S. Ct. 2689, 2694, n.3, 61 L.Ed.2d 433 (1979)," Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

a.  Excessive Force

Plaintiff alleges violations under the Fourth and Fourteenth Amendments (Docket No. 1, Compl. ¶ 1).  From the allegations in the Complaint and the moving papers, the constitutional claims here are excessive force and false arrest or imprisonment during Plaintiff's arrest.  "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force," Graham, supra, 490 U.S. at 394 (citation omitted), see id. at 394-95 (Fourth Amendment seizure rights); Tennessee v. Garner, 471 U.S. 1, 7-22, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

Excessive force under the Fourth Amendment (as applied to the States under the Due Process Clause of the Fourteenth Amendment), Graham, supra, 490 U.S. at 395 (Docket No. 30, Defs. Reply Memo. at 8); see City of Oklahoma City v. Tuttle, 471 U.S. 808, 816-17, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), is analyzed under that Amendment's "objective reasonableness" standard, that "a particular use of force must be judged from

15

the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," Graham, supra, 490 U.S. at 388, 395-96.  The test of reasonableness and "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," id. at 396.  The Fourth Amendment is not violated by an arrest of the wrong person, id.; Hill v. California, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971).  Further, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' Johnson v. Glick, 481 F.2d [1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)], violates the Fourth Amendment," Graham, supra, 490 U.S. at 396.   "The calculus of reasonableness" also covers the fact that police officers "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation" id. at 396-97.

Courts have found at least three factors in balancing an individual's Fourth Amendment interests in avoiding unreasonable seizure (including the excessive use of force) and the government's interest in law enforcement.  These factors are "(1) the nature and severity of the crime leading to arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight," Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (Docket No. 26, Pl. Memo. at 16).

This reasonableness is objective, "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," Graham, supra, 490 U.S. at 397.

### b.  False Arrest

False arrest (or false imprisonment) in a § 1983 civil rights action has the same elements as state common law false arrest claim, Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995), cert. denied, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  Those elements are the defendant intended to confine plaintiff; plaintiff was conscious of the confinement and did not consent to the confinement; and the confinement was not otherwise privileged, Singer, supra, 63 F.3d at 118 (quoting Broughton v. State of N.Y., 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, cert. denied, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975)).  One notable privilege is that the officers had probable cause to arrest plaintiff, see id.  "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,'" Weyant, supra, 101 F.3d at 852 (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir.1994)).

This case presents a traffic stop and an arrest.  Each has a different standard authorizing police interaction (see also Docket No. 24, Pl. Atty. Affirm. ¶ 12, Ex. L, at page 3 of 6, "Levels of Police Intrusion").  As observed by Justice David Souter in Brendlin v. California, 551 U.S. 249, 251, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007), "when a police officer makes a traffic stop, the driver of the car is seized within the meaning of the Fourth Amendment."  That stop is a Fourth Amendment seizure "even though the purpose of the stop is limited and the resulting detention quite brief," Delaware v. Prouse, 440 U.S. 648,

653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); Whren v. United States, 517 U.S. 806, 809-

10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); Brendlin, supra, 551 U.S. at 255, 127 S.Ct.

2400, 168 L.Ed.2d 132.   This means that the traffic stop is subject to the Fourth

Amendment "imperative that it not be 'unreasonable' under the circumstances.   As a

general matter, the decision to stop an automobile is reasonable where the police have

probable cause to believe that a traffic violation has occurred," Whren, supra, 517 U.S. at

810; see Terry v. Ohio, 392 U.S. 1, 85 S.Ct. 1868, 20 L.Ed.2d 383 (1968).

An arrest is a prolonged detention, requiring more than the reasonable suspicion

of an offense that a traffic stop might require.   Probable cause is required to justify an

arrest.   Under New York criminal procedure, when an officer has probable cause to

believe that an offense has been committed in his presence and that the person arrested

committed the offense, the arrest is justified, N.Y. Crim. Proc. Law § 140.10(1)(a), (2).

"Probable cause to arrest exists when authorities have knowledge or reasonably

trustworthy information sufficient to warrant a person of reasonable caution in the belief

that an offense has been committed by the person to be arrested," McGuire v. City of

N.Y., 142 F. App'x 1, 3 (2d Cir. 2005); Soomro v. City of N.Y., 174 F. Supp.3d 806, 812

(S.D.N.Y. 2016).   The court in Soomro noted that

> "Probable cause is a 'fluid concept' that does not depend on 'absolute
> certainty,' but rather on 'fair probability.'   McGuire, 142 Fed. Appx. at 3
> (citation omitted). Consistent with these considerations, courts have
> recognized that probable cause can exist 'even without specific evidence of
> knowledge and intent that will have to be proved to secure a conviction at
> trial' because of 'the practicable realization that an officer frequently has no
> reason to know at the time he observes a person engaged in proscribed
> conduct what is in the person's mind.'   Id."

Soomro, supra, 174 F. Supp.3d at 812.

### 3.  State Common Law Torts

Plaintiff appears to allege three common law torts, assault, battery, and false arrest, differing from federal civil rights violations.

#### a.  New York Civil Assault and Battery

"Under New York law, a 'civil "assault" is the intentional placing of another in apprehension of imminent harmful or offensive contact.  The elements of a civil "battery" are (1) bodily contact, which is (2) harmful or offensive in nature, and (3) made with intent.'" Doe v. Alsaud, 224 F. Supp. 3d 286, 294 (S.D.N.Y. 2016) (citations omitted).

Obviously, there is some overlap between federal excessive force and civil assault and battery in the physical harm or contact.  The difference is the lawfulness of the use of force that creates harm, see also Johnson v. Glick, supra, 481 F.2d at 1033.

#### b.  State Law False Imprisonment

To state a claim for false imprisonment under New York law in a § 1983 action "the plaintiff must show that '(1) the defendants intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged,'" Salem v. City of N.Y., No. 17 Civ. 4799 (JKG), 2018 WL 3650132, at *3 (S.D.N.Y. Aug. 1, 2018) (quoting Holland v. City of Poughkeepsie, 90 A.D.3d 841, 845, 935 N.Y.S.2d 583, 589 (2d Dep't 2011) (quoting in turn Lee v. City of N.Y., 272 A.D.2d 586, 586, 709 N.Y.S.2d 102, 102 (2d Dep't 2000)).

### 4.  Monell and Respondeat Superior

"A municipality may not be held liable under § 1983 solely because it employs a tortfeasor," Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (Docket No. 20, Defs. Memo. at 7).  This is

based in part on the text of that section because it imposes liability upon the person who deprived a federal right, id. at 403.  The Supreme Court also found it was based upon the legislative history for § 1983, that Congress had concern whether it could impose liability upon a municipality for the conduct of others, id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 665-83, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

"To hold a city liable under § 1983 for unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements:  (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right," Batista v. Rodriquez, 702 F.2d 393, 397 (2d Cir. 1983); see City of Oklahoma City v. Tuttle, 471 U.S. 808, 824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); Monell, supra, 436 U.S. at 694 (plaintiff must identify the municipal policy or custom that caused plaintiff's injury) (id.).  That policy or custom has to be "the moving force" behind violation of federal rights, City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (id.).  Plaintiff also needs to show that the policy or custom proximately caused the deprivation, Owen v. City of Independence, 445 U.S. 622, 633, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (id.).

### 5.  Supplemental Jurisdiction

Assuming Plaintiff alleges state common law claims, this Court exercises jurisdiction over those claims based upon supplemental jurisdiction to the original federal jurisdiction claims, 28 U.S.C. § 1367.  Subject matter jurisdiction may be raised by the parties or by this Court sua sponte, Lyndonville Sav. Bank & Trust v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000); LaChapelle v. Torres, 37 F. Supp. 3d 672, 680 (S.D.N.Y. 2014).

6.  New York General Municipal Law

To allege negligence claims against a town or its employees under New York General Municipal Law, the claimant needs to serve a Notice of Claim upon the municipality, N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1).  The Notice of Claim is a condition precedent for commencing such suits, N.Y. Gen. Mun. Law § 50-i(1)(a); see also Hardy v. New York City Health & Hosps. Corp., 164 F.3d 789 793 (2d Cir. 1999) (in federal court state notice of claim statutes apply to state law claims); 13391 Broadway LLC v. Village of Alden, No. 19CV882, 2020 WL 7028601, at *7 (W.D.N.Y. Nov. 30, 2020) (Skretny, J.), with a limitations period of one year and ninety days after the event, N.Y. Gen. Mun. Law § 50-i(1)(c), see also 13391 Broadway LLC, supra, 2020 WL 7028601, at *7.

7.  Qualified Immunity

When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is whether the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  As required by the Saucier Court, this Court first considered the constitutional question, then considered the qualified immunity question, id.  But the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), overruled Saucier in requiring courts to first determine whether a constitutional violation occurred before considering whether defendants enjoy qualified immunity.  Instead, district courts determine in each case whether to consider first the question of immunity or whether a constitutional violation has occurred, id. at 231-32.

Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 196 (1982). "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity." Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

For false arrest, an officer is entitled to qualified immunity if he or she acted with either probable cause or "arguable probable cause," that is where "officers of reasonable competence could disagree on whether the probable cause test was met," Dufort v. City of N.Y., 874 F.3d 338, 354 (2d Cir. 2017).

B. Parties' Contentions

Defendants claim judgment dismissing Plaintiff's claims because he has not produced competent evidence to support his claims (Docket No. 20, Defs. Memo. at 4-5). Defendants contend that Plaintiff alleges only two federal claims and the rest of his counts are state law claims. On the state law claims, Plaintiff never served a Notice of Claim and thus fails to state claims against the Town and Town employees under New York General Municipal Law § 50-i (id. at 5-6). These claims are also time barred by the one year and ninety-day statute of limitations under the General Municipal Law (id. at 6-7).

Defendants next contend that Plaintiff fails to prove the existence of a Town policy to extend liability to the Town (id. at 7-8).

Defendants next assert qualified immunity for Officers Curtis and Bzibziak (id. at 8-9).  They argue that Plaintiff has not demonstrated that the officers violated a clearly established right because the officers had probable cause to stop and later arrest Plaintiff (id. at 9-10).  They base this upon the dashboard camera video recording of the stop and arrest and the police report from the incident (Docket No. 21, Ex. K; Docket No. 20, Ex. H[2]).  They claim that it was objectively reasonable for the officers to believe that their acts did not violate those rights, Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987) (Docket No. 20, Defs. Memo. at 10).

Plaintiff argues that there are material issues of fact, such as did Curtis and Bzibziak have probable cause to stop Plaintiff, how Plaintiff sustained injuries to his ribs (Docket No. 26, Pl. Memo. at 10-11).  Another issue he raises was whether Curtis violated Plaintiff's Sixth Amendment rights in depriving him counsel after he requested it (id. at 11), although he never alleged a claim under that Amendment.  Other issues Plaintiff contends is whether he failed the field nystagmus eye test due to Plaintiff suffering from glaucoma (id.) and whether Plaintiff attempted to flee or resist arrest, despite Plaintiff's documented hip problems (id. at 11, 6, 12; Docket No. 24, Pl. Atty. Aff. ¶ 3, Ex. C (Plaintiff's medical records)).

Plaintiff disclaims raising state law claims, that his assault and battery counts (Counts II-VI) merely amplify his civil rights claims (Docket No. 26, Pl. Memo. at 13-14).

---

[2]See also Docket No. 20, Defs. Ex. F, repeat of report with Defendants' initial disclosure, Docket No. 24, Pl. Atty. Affirm. Ex. F.

23

As for Counts VIII and IX, he argues that the Town has perpetuated a custom of failing to discipline its police officers, exemplified by Sergeant Mullen seeing Plaintiff's condition when he arrived at the police headquarters and denied him any assistance or sanctioned Curtis or Bzibziak (id. at 14-15).

Plaintiff responds to the claim of qualified immunity by stating that issues of fact preclude asserting immunity without first resolution by a finder of fact (id. at 15-18).  He denies that an objectively reasonable officer would believe that waiting to turn at a traffic light established probable cause for a traffic stop (id. at 20-22).

In their Reply, Defendants argue that Plaintiff concedes he is not alleging state law claims, thus Counts II-VI and IX (against the Town) should be dismissed (Defs. Reply, No. 30, Defs. Reply Memo. at 2).  This would leave Counts I (Section 1983 claim against individual officers), VII (false imprisonment against the officers), and VIII (Section 1983 claim against Town) (id.).  Next, Defendants argue that Plaintiff's Monell claim against Town in County VIII should be dismissed (id. at 3-4).  Defendants repeat that the officers enjoy qualified immunity (id. at 4-7).  Finally, Defendants contend that the Complaint fails to allege an excessive force claim under federal law, only state common law assault and battery claims (id. at 7-9) that should be dismissed either for Plaintiff's express abandonment or for not abiding New York General Municipal Law.

C.  Plaintiff's Civil Rights Claims

Addressing first Plaintiff's explicit federal civil rights claims (Counts I (§ 1983 claim) and VI (false imprisonment)) against Curtis and Bzibziak, Defendants argue that Plaintiff has not presented competent evidence for his claims (Docket No. 20, Defs. Memo. at 4-

5).  Plaintiff raises several factual questions he deems to be material that should preclude summary judgment to Defendants (Docket No. 26, Pl. Memo. at 10-12).

### 1.  False Arrest and False Imprisonment

The record here established that Defendant officers intended to confine Plaintiff, that Plaintiff was conscious of that confinement, and that he did not consent to it.  The issue is whether the confinement was privileged.  Defendants argue that they had probable cause to stop and later arrest Plaintiff while Plaintiff denies.

### a.  Traffic Stop

Plaintiff alleges that Officers Curtis and Bzibziak lacked probable cause to stop him and then to arrest him.  Plaintiff raises as a material fact whether he turned at the green traffic light on Walden (Docket No. 26, Pl. Memo. at 5).  Defendants contend that the video recording from their dashboard camera indicates that he stopped at that green light, committing a traffic infraction and thus establishing their probable cause (Docket No. 30, Defs. Reply Memo. at 5; see Docket No. 20, Defs. Memo. at 2, 10).

This issue thus turns on the first seconds of the dashboard camera recording.  The recording starts as the Defendants' patrol car turned in the car wash lot and does not show what preceded it or whatever induced Officer Curtis to turn the vehicle around (Docket No. 21, Ex. K, at 00:00:00).  At 00:00:10, Defendants' patrol car completed has turn onto Walden and was approaching the Walden-Reo intersection where Plaintiff's car was stopped, and the light was green.  Plaintiff remained stopped at that intersection until 00:00:17, when he began slowly turning on to Reo.  There was no traffic on Walden besides the parties' vehicles and no other apparent obstruction to Plaintiff turning.

25

Neither side has stated whether a seven-second delay in moving forward at a green light constitutes a violation of the New York Vehicle and Traffic Law. Vehicle and Traffic Law § 1110(a) requires obedience of traffic control devices; here, proceeding when the light turned green and traffic permitting forward movement, N.Y. Veh. & Traf. Law § 1110(a). Section 1111(a)(1) provides that a green indication of a traffic signal allows traffic to proceed straight through or turn right or left (unless prohibited by a sign) and such a turn shall yield the right of way to other traffic lawfully within the intersection, N.Y. Veh. & Traf. Law § 1111(a)(1).

The Vehicle and Traffic Law further defines "stop or stopping" as "when prohibited means any halting even momentarily of a vehicle, whether occupied or not, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic-control sign or signal," N.Y. Veh. & Traf. Law § 147. The prohibition arises from Vehicle and Traffic Law § 1202, which provides that, except when necessary to avoid a conflict with other traffic, or the direction of an officer or traffic control device, a vehicle cannot stop within an intersection, N.Y. Veh. & Traf. Law § 1202(a)(1)(c); see also N.Y. Veh. & Traf. Law §§ 1200(a) ("When stopping is prohibited by this article, or by local law, ordinance, order, rule or regulation, no person shall stop, stand or park a vehicle, whether occupied or not, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic-control sign or signal."), 147 (defining "stop or stopping").

A federal court in North Carolina applied North Carolina traffic law and found probable cause to stop a suspect when he stopped for a long time at a green traffic light, United States v. Winstead, No. 15-CR-00171-IF-1, 2015 WL 13735392, at *4, 7-8

(E.D.N.C. Dec. 3, 2015) (Jones, Mag. J.).  The police officers in that case noted that a prolonged stop was one traffic offense, in violation of N.C. Gen. Stat. § 20-161 (a provision like New York Vehicle and Traffic Law § 1202), that formed probable cause for the subsequent stop and leading to denial of the suspect's suppression motion, <u>Winstead</u>, <u>supra</u>, 2015 WL 1375392, at *7-8.

This Court has not found New York cases applying Vehicle and Traffic Law traffic control devices or stopping provisions as grounds for probable cause where a suspect did not move at a green light.

From the totality of circumstances presented here, Defendant officers had reasonable suspicion arising from Plaintiff's delayed departure and probable cause to stop Plaintiff. This incident began after 2:30 in the morning.  From the video recording, Plaintiff was stopped at a green traffic light for seven seconds with no impediment to making the desired turn.  He later admitted that he stopped to eat chicken wings at that intersection (at 00:19:43-44, 00:26:23).  Plaintiff fails to establish a material issue of fact whether the light was red or green based upon that recording (at 00:00:06-10).

Defendants then followed Plaintiff on Reo Avenue with emergency lights on because of Plaintiff's failure to turn at the green light, calling for him to pull over.  Plaintiff did not do so, now arguing that he wanted to find a clearer space to stop (Docket No. 26, Pl. Memo. at 5).  This failure to stop created a Vehicle and Traffic Law violation for failure to yield the right of way to an emergency vehicle, N.Y. Veh. & Traf. Law § 1144(a), which creates probable cause for the traffic stop.  This is one of the offenses Defendants ultimately charged Plaintiff.

Once the vehicle was stopped, Defendants could see that the registration was expired, giving probable cause for another Vehicle and Traffic infraction, N.Y. Veh. & Traf. Law § 401(1)(a), which they ultimately charged Plaintiff (see Docket No. 20, Defs. Atty. Aff. Ex. F).

b.  Arrest

Plaintiff was arrested for driving while intoxicated, unlawful possession of marijuana, resisting arrest, failing to take a breath test, as well as driving an unregistered vehicle (Docket No. 20, Defs. Statement ¶¶ 17-18).   The arrest for driving while intoxicated is based upon Curtis' assessment that Plaintiff appeared to be intoxicated, which Plaintiff disputes.  Failing to take the breath test stems from Plaintiff's refusal to participate in sobriety tests.  As Defendants argue (Docket No. 30, Defs. Reply Memo. at 6), this failure by itself is an offense, Berg, supra, 92 N.Y.2d at 703, 685 N.Y.S.2d at 908.

The unlawful possession of marijuana was detected from the officers' search of Plaintiff's vehicle incident to the arrest, see United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

Plaintiff's resisting arrest, however, raises issues of fact.  Plaintiff contends that he lacked the physical ability to resist or flee (see Docket No. 26, Pl. Memo. at 12, 6-7).  Both sides point to the dashboard camera video recording to establish whether Plaintiff resisted.  This Court's review of the recording, however, presents only the officers' instructing Plaintiff to stop resisting and Plaintiff's protest after he was secured.  Thus, whether Plaintiff resisted is the officers' word against Plaintiff's.

Based upon the earlier traffic offenses, Defendants had a lawful basis to detain Plaintiff.   Therefore, Defendants' Motion for Summary Judgment (Docket No. 20)

dismissing so much of his Count I (violation of constitutional rights, here the right against unreasonable seizure) and Count VII (false imprisonment) is granted.

### 2.  Excessive Force

Defendants argue that Plaintiff has not alleged a federal excessive force claim (Docket No. 30, Defs. Reply Memo. at 7-9), contending that the evidence (the police report and the dashboard camera video showing Plaintiff attempted flight) establishes that excessive force was not applied (id. at 8).  Plaintiff has argued that the apparent state law assault and battery counts (Counts II-VI) merely amplified his federal civil rights claim (see Docket No. 26, Pl. Memo. at 13-14).  He presents issues of fact from his injuries that he claims were at the hands of the officers during the arrest (id. at 11).

The use of force is based upon Plaintiff's version of the events.  As for Count I, this Court has reviewed the dashboard camera video (Docket No. 21, Defs. Ex. K; Docket No. 28, Pl. Ex. B) both sides presented in support of their respective positions.  Given the angle of that camera (fixed straight ahead showing what was immediately ahead of the windshield, with that viewed blocked by Plaintiff's vehicle), peripheral images such as Plaintiff's participation in the sobriety tests, Defendants allegedly striking Plaintiff, Plaintiff's purported resistance and flight were obstructed by Plaintiff's vehicle.  The recorded audio is limited to Curtis' questioning Plaintiff at the start of the stop, some of Plaintiff's answers once he was outside of his vehicle, Plaintiff yelling prior to being placed in the patrol car, and Plaintiff's statements once in the patrol car.  The video recording thus is far from dispositive of what occurred during the traffic stop.

The recorded dashboard camera footage does not show any altercation.  It does not show Curtis striking Plaintiff (as he claims) as it did not show Plaintiff resisting or

attempting to flee.  Thus, this Court is left with the testimony of the parties at the scene. There are thus issues of fact as to whether Curtis or Bzibziak struck Plaintiff (or how Plaintiff allegedly resisted) and whether such blows were excessive.  Plaintiff merely provides evidence of the treated injuries and argues that the force was unnecessary or excessive for the arrest.

Applying the Tracy elements for excessive use of force, 623 F.3d at 96, the nature and severity of the offenses alleged against Plaintiff when force was applied was driving while intoxicated and the traffic offense of driving an unregistered vehicle.  The other offenses (namely the marijuana possession and refusal to take a chemical sobriety test) were detected after Plaintiff was secured in the patrol car.  These are offenses that hardly warrant using force at all, see Chalco v. Belair, No. 3:15-cv-340, 2017 WL 2408122, at *4-5 (D. Conn. June 1, 2017) (no evidence suggest use of force for traffic stop would have been reasonable); Harwe v. Floyd, No. 3:09-cv-1027 (MRK), 2011 WL 674024, at *14-15 (D. Conn. Feb. 17, 2011) (denying summary judgment where court held a reasonable jury could find that defendant used excessive force in escorting plaintiff to the patrol car and struck her head in the doorway).  Minimal and reasonable uses of force incidental to arrest (for example, to search for weapons) fails to state a Fourth Amendment claim for excessive force, Azor v. City of N.Y., No. 08CV4473 (RJD)(LB), 2012 WL 1117256, at *4 (E.D.N.Y. Mar. 30, 2012) (citing Graham, supra, 490 U.S. at 396 (recognizing that "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion")).  Here, there is no accusation that Plaintiff was armed (he denied it during questioning before the arrest).  The force here applied during the arrest because Defendants claimed Plaintiff resisted.

30

As for Plaintiff posing an immediate threat to the officers or others, Defendants have only introduced evidence of Plaintiff's alleged resistance. On that active resistance or flight as a factor, Plaintiff denies attempting to flee or resist, pointing to his physical ailments that precluded either action. The video recording does not depict the arrest, save the audio recording of sounds of a scuffle and the officers ordering Plaintiff to stop resisting. Therefore, there are material issues of fact whether excessive force was applied by Defendants upon Plaintiff in this arrest.

This Court next considers whether Plaintiff alleges claims in Counts II-VI of the Complaint for excessive force, in addition to the allegation contained in Count I.

### D. Has Plaintiff Alleged Viable State Law Claims?

The parties dispute whether Counts II-VI state distinct state law assault and battery claims or merely amplify Plaintiff's civil rights claims. The Complaint does not cite the authority for these Counts or state that they are subdivisions of a greater argument as Plaintiff now contends (Docket No. 26, Pl. Memo. at 13-14). Although Plaintiff now claims he is not alleging state law claims (id.), the Complaint does assert this Court's supplemental jurisdiction for causes of action that arise under New York law (Docket No. 1, Compl. ¶ 3).

This Court will address these Counts as examples of alleged violations of Plaintiff's federal civil rights (asserted in Counts I and VII) rather than as stand-alone state law causes of action. There are three reasons for this. First, as state causes of action, Plaintiff failed to preserve them by not filing a timely Notice of Claim. Second, the Complaint alleging these claims was filed after one year and ninety days from the arrest, hence these as state law torts are time barred under General Municipal Law § 50-i. Third,

31

absent original federal jurisdiction, this Court has the discretion not to considered state law claims under its supplemental jurisdiction.

By considering these claims with Plaintiff's Counts I and VII, obviously, there is some overlap between federal excessive force and New York State civil assault and battery in the physical harm or contact.  The difference is the lawfulness of the use of force that creates harm, see also Johnson v. Glick, supra, 481 F.2d at 1033.

Plaintiff alleges federal excessive force claims in Counts II, III, IV, V, and VI, despite not using that nomenclature.  Plaintiff is equating common law assault and battery alleged as excessive force (see Docket No. 26, Pl. Memo. at 11).

In establishing that his excessive force claim was a violation of clearly established right for resisting Defendants' qualified immunity claim (despite Defendants not asserting in their motion qualified immunity to dismiss Plaintiff's excessive force claims), Plaintiff argues that the force is deemed excessive upon assessing three factors, the nature and severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect actually resisted arrest or attempted to flee (Docket No. 26, Pl. Memo. at 16, 17), see Tracy, supra, 623 F.3d at 96.

Counts II through VI allege applications of force.  Coupled with Count I, Plaintiff alleges use of force in violation of Plaintiff's Fourth Amendment rights.  Counts II through VI, Plaintiff's evidence, and his questions of fact show the results of the use of force. What the parties have not addressed is whether that use of force was excessive.  This Court thus is presented two issues of fact (a) whether excessive force was applied to Plaintiff and (b) whether an objectively reasonable officer at that scene would find that force was excessive.  Both questions boil down to a credibility dispute between the officer

Defendants and Plaintiff, as well as eyewitnesses (such as the two other officers present when Plaintiff eventually was brought to the patrol car).  These issues preclude summary judgment to Defendants.

Therefore, Defendants' Motion for Summary Judgment (Docket No. 20) seeking dismissal of Plaintiff's excessive force counts (both expressly federal claims and implied from state common law claims) is denied.

### E.  Sixth Amendment Claim

Plaintiff now asserts a Sixth Amendment claim (Docket No. 26, Pl. Memo. at 4, 12, 20 (to refute qualified immunity claim)), although he never alleged that as a civil rights claim in his Complaint.  Plaintiff never claimed in the Complaint he was coerced to make statements without the advice of counsel, or that Defendants (or other Cheektowaga Police officers) questioned him after he invoked his right to counsel.

Once Plaintiff was in the patrol car, the dashboard camera recording reveals Defendants advising Plaintiff of his Miranda rights, Plaintiff repeatedly asserting his right to counsel, then being advised of the consequence if he failed to take a chemical sobriety test, and Plaintiff refusing.  Plaintiff refused to undergo a chemical sobriety test, invoking his Sixth Amendment rights as recorded by the dashboard camera, at 00:20:41-00:21:40. The New York Court of Appeals in Berg held that such testing is not compelled testimony to require Miranda warnings and the refusal to take such a test was not the product of custodial interrogation, 92 N.Y.2d at 704, 705, 685 N.Y.S.2d at 908, 909.

There were no other questions posed by the officers during that arrest and through his transport to Cheektowaga Police Headquarters (see generally Docket No. 21, Defs. Ex. K).  Plaintiff makes no allegations of what occurred in the Police Headquarters.

Therefore, Plaintiff fails to allege a Sixth Amendment violation.

    F.  Qualified Immunity for Individual Defendants

Defendants assert qualified immunity for officers Curtis and Bzibziak for stopping and arresting Plaintiff (Docket No. 20, Defs. Memo. at 9; Docket No. 30, Defs. Reply Memo. at 4).  Defendants do not assert that immunity for Plaintiff's excessive force claims; rather, they contend that Plaintiff failed to allege such claims (Docket No. 30, Defs. Reply Memo. at 7-8).

    1.  Clearly Established Constitutional Right

For Plaintiff's lack of probable cause and false arrest claims, the right at issue here is the Fourth Amendment right against unreasonable seizure.  Defendants argue that the officers had probable cause (or "arguable probable cause") to stop (from Plaintiff's violation of Vehicle and Traffic Law in not driving through the green traffic signal) and later to arrest Plaintiff (driving while intoxicated, resisting arrest), therefore there was no violation of a clearly established constitutional right against unreasonable seizure (Docket No. 20, Defs. Memo. at 10; Docket No. 30, Defs. Reply Memo. at 4-5).  As this Court declared above, the officers had probable cause to stop and later to arrest Plaintiff for at least some of the offenses charged.  For qualified immunity, Plaintiff has not established violation of a clearly constitutional right, therefore the officers are entitled to qualified immunity.  Their Motion for Summary Judgment (Docket No. 200) on this ground is granted.

    2.  Objective Reasonableness that Officers Did Not Violate Plaintiff's Rights

Defendants next contend, under the precise circumstances presented, Plaintiff failed to establish that it was objectively unreasonable for Curtis and Bzibziak to stop and

arrest him (Docket No. 20, Defs. Memo. at 10-13).  Plaintiff argues without support that it was not objectively reasonable given Defendants' violations of his Fourth and Sixth Amendment rights (Docket No. 26, Pl. Memo. at 20).

If this Court were to consider the reasonableness of the officers' actions, as Plaintiff argues (Docket No. 26, Pl. Memo. at 18-19), the suspicious activity was Plaintiff waiting at a green light before turning up Reo Avenue.  The finding above recognizing probable cause for the stop would also be an objectively reasonable action of any other police officer observing this driving at 2:30 am.   Given Plaintiff's failure to assert a constitutional violation, this Court need not determine whether the officers' actions also were objectively reasonable.

Thus, the individual Defendants' Motion for Summary Judgment (Docket No. 20) on qualified immunity grounds is granted as to Plaintiff's false arrest claim.

G.  Respondeat Superior Claims Against Town

Plaintiff here has not alleged an official policy or custom that caused him to be subject to denial of his constitutional right.  He needed to allege a Town policy or custom. Plaintiff merely argues a custom that the Town insufficiently trained police officers, presumably in not training officers to avoid assaulting suspects and training supervisors to intervene when advised of such an assault (see Docket No. 26, Pl. Memo. at 14-15). His argument is tied to Sergeant Mullen and the sergeant's failure to react to Plaintiff's injuries when he appeared in police headquarters.  Tellingly, Mullen also was not named as a Defendant for that failure to intervene or assist.  Plaintiff concludes that the Town has a custom of ignoring cases of police brutality and complaints of arrestees indicating police assault (id. at 15).  His responding papers, however, do not present evidence of

such a custom (such as other instances of disregard of the effects of police use of force on arrestees).  He merely argues the point in his unsworn Memorandum of Law.  Plaintiff introduced a training excerpt on proper search and handcuff techniques, the standards for stops and arrests, and use of force under New York Penal Law Article 35 (Docket No. 24, Ex. L).  The use of force training materials are slides for the presentation describing when deadly physical force and lesser forms of force should be used.  There is no evidence that Curtis and Bzibziak did not take this training prior to the April 2014 stop.

Plaintiff also has not shown that any policy or custom was the moving force behind the alleged violation of his constitutional rights that proximately caused the deprivation. The Defendant Town of Cheektowaga's Motion for Summary Judgment (Docket No. 20) dismissing Counts VIII and IX is granted for Plaintiff failing to assert vicarious liability.

## IV.    Conclusion

Plaintiff has not alleged state law causes of action in Counts II-VI; if he did, he failed to file a timely Notice of Claim to assert these claims against these municipal Defendants.  These counts, however, will be construed as amplification of Plaintiff's Count I.  As for his remaining claims (including recasting Counts II-VI as examples of alleged federal civil rights violations), Plaintiff fails to provide evidence that the traffic stop here lacked probable cause to state claim for false arrest (or raises material issues of fact to preclude Defendants' Motion for Summary Judgment); Defendants' Motion for Summary Judgment dismissing so much of Plaintiff's Count I alleging false arrest is granted.  There are issues of material fact whether excessive force was used to arrest Plaintiff.  Defendants' Motion for Summary Judgment to dismiss the excessive force

claims (however expressed in Counts I, II-VI) is denied.  Count VII (for false imprisonment) also is dismissed.

Defendants' Motion for Summary Judgment to dismiss Counts VIII and IX against the Town of Cheektowaga is granted because Plaintiff has not alleged a violated Town policy or custom to create respondeat superior liability upon the Town.  Plaintiff has not produced evidence of material issue of fact that such a custom or policy was the proximate cause of his constitutional violation.

Alternatively, Defendants Curtis and Bzibziak enjoy qualified immunity against Plaintiff's false arrest claims only; their Motion for Summary Judgment for qualified immunity against Plaintiff's false arrest claims is granted.  Plaintiff has not established a violation of his constitutional rights from his traffic stop and arrest.  The stop was based upon probable cause and the officers' subsequent actions in arresting Plaintiff are immunized.  This Court need not address the objective reasonableness of the traffic stop and arrest.   Defendants, however, have not asserted immunity against Plaintiff's excessive force claims.

Thus, remaining for trial or other adjudication is Plaintiff's excessive force claims (Counts I-VI), either expressly federal or construed as federal claims.  This case will be submitted to mediator Carol Heckman to renew mediation.  Parties shall also report the status of the case, either its resolution or preparation for trial.

## V. Orders

IT IS HEREBY ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 20) is GRANTED in part, DENIED in part, consistent with this decision.

FURTHER, that this case is REFERRED for alternative dispute resolution under Section 2.1.B of the Plan for Alternative Dispute Resolution in the United States District Court for the Western District of New York ("the ADR Plan").

FURTHER, that the parties shall re-engage with Mediator Carol Heckman (cf. Docket No. 14) and participate in the mediation session as scheduled by the parties and Ms. Heckman.

FURTHER, that within 10 days of the mediation session and any subsequent sessions, Ms. Heckman shall file a Mediation Certification setting forth the progress of mediation.

FURTHER, that the mediation process shall be completed by May 25, 2021.

FURTHER, that the parties shall timely comply with all relevant requirements of the ADR Plan, which is available at http://www.nywd.uscourts.gov.

FURTHER, that the parties shall file a joint written notice concerning the status of mediation and the case overall on June 9, 2021.  Upon receipt of this status report, this Court may schedule a status conference.

SO ORDERED.

Dated:        February 5, 2021
              Buffalo, New York


                                          s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          United States District Judge